[43,46]

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PMC FILM CANADA INC., | : | Civil Action No. 04-5150 (FLW) |
| Plaintiff, | : |  |
| v. | : | **OPINION** |
| SHINTECH, INC., | : |  |
| Defendant | : |  |

**WOLFSON, District Judge**

Presently before the Court are separate cross-motions for Summary Judgment by Defendant, Shintech Inc. ("Shintech"), and Plaintiff, PMC Film Canada ("PMC Film") arising out of pricing disputes regarding polyvinyl chloride ("PVC") sold by Defendant to Plaintiff. Beginning in 1999, Plaintiff and Defendant entered into a series of agreements pursuant to which Defendant was to supply Plaintiff with PVC. Plaintiff seeks to recover damages for alleged contractual breaches arising out of these agreements. Specifically, Plaintiff's First Amended Complaint alleges (1) that Defendant breached the parties' agreement by overcharging for the period July 1, 2003 to September 30, 2003; and (2) that Defendant breached their agreement by overcharging for the period between January 1, 2004 and August 31, 2005. On April 4, 2006, Shintech filed a motion for Summary Judgment. On May 2, 2006, PMC Film filed a cross-

motion for Summary Judgment. The Court has considered the moving, opposition and reply papers, and for the reasons set forth below, both Plaintiff's and Defendant's Motion for Summary Judgment on Count I will be denied and Defendant's Motion for Summary Judgment on Count II will be granted.

**I.   Background**

Plaintiff, PMC Film manufactures PVC film for use in the packaging of retail products. The principal raw material used in Plaintiff's manufacturing process is PVC resin. PMC Film Fact Statement ("PMC Film Fact St.") at 1. Defendant Shintech is a producer of PVC resin. Shintech Statement of Undisputed Material Facts ("Shintech Fact St.") at ¶ 1. PMC Film purchases PVC resin from Shintech for use in its operations. Id. at ¶ 2. In 1999, PMC Film and Shintech entered into the first of five written agreements pursuant to which Shintech was to supply PVC to Plaintiff. Id. at ¶ 6. Each of the agreements between the parties utilized an industry index, the Chemical Data Index ("CDI"), in part, to establish the price of PVC resin in a given month. Id. at ¶ 6; PMC Film Response to Shintech Fact St. at ¶ 6. In other words, each agreement used the CDI index price as a starting point for the final negotiated contract price of PVC resin. Id. at ¶ 5.

The five agreements entered into by the parties established the price of PVC as follows:

| Contract Period Beginning Date | Discount from CDI |
|---|---|
| July 1, 1999 | No discount |
| July 1, 2000 | 7 cent discount |
| July 1, 2002 | 11 cent discount |
| July 1, 2003 | 16.75 cent discount |
| September 2005 | 16.75 cent discount |

2

Shintech Fact St. at ¶ 6[1]. In each of these five contracts, both parties agreed that if CDI made a non-market adjustment to its index, the parties would negotiate a substitute for the index and provided that the adjustment mechanism would be "consistent with CDI as of the date of [the contract]." Id. at ¶ 10; PMC Film Response to Shintech Fact St. at ¶ 10.

In addition to entering into five separate agreements with specified prices for PVC, Plaintiff would, on occasion, request that Shintech discount the contract price in order for Plaintiff to remain competitive in the marketplace. Shintech Fact St. at ¶ 14-15; PMC Film Response to Shintech Fact St. at ¶ 14-15. Each of these discounts, known as temporary voluntary allowances ("TVAs") were granted at Shintech's discretion. Shintech Fact St. at ¶ 14-15; PMC Film Response to Shintech Fact St. at ¶ 14-15. For example, between July 1, 2003 through September 30, 2003, Shintech granted TVAs to PMC Film in the amount of 4.5 cents per pound. DiMuro Cert., Ex. 8 at App. 68-161. Shintech granted PMC an additional discount of 4 cents per pound from July 1, 2003 through December 31, 2003. Shintech Fact St. at ¶ 18; PMC Film Response to Shintech Fact St. at ¶ 18.

In May 2003, CDI announced that it would make a future, non-market downward adjustment ("non-market change") of eight cents per pound to the CDI index beginning in January 2004. Shintech Fact St. at ¶ 8-9; PMC Film Response to Shintech Fact St. at ¶ 8. Subsequently, Shintech and PMC Film began to negotiate terms for the 2003 Contract. On August 4, 2003, Shintech presented a proposal to PMC Film for the contract period beginning

---

[1] The agreements at issue in this dispute are the contracts beginning July 1, 2002 and July 1, 2003.

3

July 1, 2003.  Id. at ¶ 11; Id. at ¶ 11.   Specifically, Shintech proposed a price of CDI minus 16.25 cents.  Id.  During the presentation, the parties discussed the anticipated non-market change to the CDI index that was to occur in January 2004.  Id.  Indeed, during the negotiations Shintech provided PMC Film with a written summary of its proposal setting forth the new proposed price for PVC resin as "CDI less 0.1625 (**)."  Chakrabarti Cert., Ex. 6; DiMuro Cert., Ex.5.   The double asterisks referred to a two line disclosure that provided: "This discount level will be adjusted if Chem Data makes a non-market adjustment.  Chem Data predicts they will make an 8 cent non-market adjustment in January '04."  Id.

In early September 2003, PMC and Shintech entered into an agreement effective from July 1, 2003 through December 31, 2005.  Section 4 of the Agreement provides:

> "The price for hopper truck shipments will be equal to CDI minus US$0.1675 (16.75 cents) per pound for the month.  For purposes hereof, "CDI" means the final monthly contract price for general purpose grade suspension PVC resin listed as "Large Buyer Contract Price" in the table for PVC of Monthly Petrochemical and Plastics Analysis published by Chemical Data, Inc....If such publication ceases, or if Chemical Data Inc. makes adjustments to its published contract price for reasons not specific to changes in the market price of PVC resin for the month, or otherwise alters its methodology in any material manner, the parties will negotiate an appropriate adjustment to the pricing mechanism or a suitable replacement mechanism, which, in either case, is consistent with CDI as of the date hereof.  Without limiting the foregoing, the non-market change of $0.08 (8 cents) per pound adjustment to CDI in January 2004 due to a change in methodology by Chemical Data, Inc. as announced in June 2003, will not affect the Price."

DiMuro Cert., Ex. 6; Chakrabarti Cert., Ex. 4.

In addition, the 2003 Contract contained a merger provision stating:

> Entire Agreement. This contract, together with the General Terms and Conditions, shall constitute the entire agreement between Seller and Buyer

> with respect to the subject matter hereof and shall supersede all previous understandings, oral or written, between the parties with regard to this subject matter. No modification of this Contract shall be effected by any purchase orders, acknowledgments, shipping documents containing terms and conditions inconsistent with or in addition to those set forth in this Contract, unless Seller and Buyer specifically agree otherwise in writing.

DiMuro Cert., Ex. 6, Ex. A § 13; Chakrabarti Cert., Ex. 4, Ex. A § 13.

After finalizing the contract in September 2003, Shintech charged PMC Film a price equivalent to CDI minus 16.75 cents through December 31, 2003[2]. Thereafter, following the anticipated 8 cent non-market change to the CDI index on January 1, 2004, Shintech began charging PMC Film a price of CDI minus 16.75 cents with a non-market adjustment of eight cents. DiMuro Cert., Ex. 7, App. 41-67. In other words, Shintech charged PMC Film a price of newly adjusted CDI minus 8.75 cents after January 1, 2004.

Between January 2004 and August 2004, PMC Film approved over 240 purchase orders from Shintech that set forth the price as CDI minus 8.75 cents. Indeed, PMC did not complain of the new price until August 11, 2004 when Dr. Paritosh M. Chakrabarti ("Dr. Chakrabarti"), President of PMC Film, wrote to John Bednarczyk ("Mr. Bednarczyk"), a Shintech regional sales manager, and explained that during a mid-year review, PMC Film discovered that Shintech had billed at a rate of CDI minus 8.75 cents. Chakrabarti Aff., Ex. 10. Moreover, Dr. Chakrabarti's letter noted that "[w]hile signing the contract, we knew that to remain competitive in the market

---

[2]Importantly, the Court notes that the price charged by Shintech from July 1, 2003 through September 30, 2003 is at issue in this case. Specifically, Plaintiff contends that because the parties had not finalized the 2003 Contract, Shintech was invoicing under the 2002 Contract, or, at a rate of CDI minus 11 cents per pound, during July, August and September 2003. However, for the sake of clarity and brevity in this Background section, the Court will simply summarize the issue as above.

place, and for us to give up a 'meet or release' clause in the contract, we needed the $0.1675 per pound rebate even after the non-market adjustment. Since we also knew that a non-market adjustment of $0.08 per pound was coming and it was not to reduce the rebate from US$0.1675, we specifically incorporated the following language in the contract 'Without limiting the foregoing, the non-market change of $0.08 (8 cents) per pound adjustment to CDI in January 2004 due to a change in methodology by Chemical Data Inc. as announced in June 2003, will not affect the price.'" Id.

In response to Dr. Chakrabarti's letter, Richard Mason ("Mr. Mason"), Shintech's Controller, advised Dr. Chakrabarti of Shintech's position concerning the contract price. Specifically, Mr. Mason's letter expressed Shintech's belief that the price of CDI minus 8.75 cents was correct and explained, "[w]hen we signed the Contract last year, both of us were aware of CDI's announced plan to make a non-market $0.08 per pound price adjustment to CDI effective January 2004.  We agreed that such adjustment would not have any effect on the price to be paid by PMC to Shintech under the Contract. That meant when CDI was reduced by $0.08 per pound in January, the price paid by PMC in January did not change from December based on the non-market adjustment. We have been billing PMC and PMC has been paying on that basis since January of this year. There has been no misunderstanding on this point. To interpret the Contract the way you wish is disingenuous in that it would give PMC an unwarranted $0.08 per pound windfall. That is not what the parties intended and is not what we agreed to in our Contract." Chakrabarti Aff., Ex. 11.  Thereafter, and for the remainder of the 2003 contract, PMC Film paid CDI minus 8.75 cents as charged by Shintech.

Plaintiff filed the instant suit on October 21, 2004, and, on March 1, 2006, PMC Film

Plaintiff filed a First Amended Complaint. Count I of the Complaint asserts a cause of action for breach of the 2003 Contract for the period July 1, 2003 through September 30, 2003. Specifically, PMC Film argues that during September 2003, Shintech charged PMC Film under the 2002 Contract price of CDI minus 11 cents instead of the 2003 contract price of CDI minus 16.75 cents. Moreover, PMC Film contends that Shintech has not provided the 5.75 cents per pound credit for the months of July and August 2003 and a 4.5 cent credit for September 2003 as required by the 2003 Contract.

Count II of the Complaint sets forth a cause of action for breach of the 2003 Contract for the period between January 1, 2004 through August 31, 2005. The sole issue in Count II is an interpretation of the contract language contained in Section 4 of the 2003 Contract. Specifically, the parties dispute whether the price to be paid by PMC Canada is CDI less 16.75 cents or CDI less 8.75 cents.

After the completion of discovery, the parties filed dispositive motions. On April 4, 2006, Shintech filed a motion for Summary Judgment. Thereafter, on May 2, 2006, PMC Film filed a cross-motion for Summary Judgment. On July 10, 2006 the case was reassigned from the Honorable Stanley R. Chesler, United States District Judge to me.

**II.      Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex</u>

Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof. Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)). In evaluating the evidence, the Court must view evidence and draw inferences "in the light most favorable to the party opposing the motion." Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

**III.  Discussion**

A. Applicable Law

Section 12 of the 2003 Contract between PMC Film and Shintech provides: "[G]overning Law. This Contract, shall be governed by the laws of the state of Texas, including without limitation the Texas Business and Commerce Code (Uniform Commercial Code)."  Thus, an initial question for this Court is whether to apply Texas law to the instant dispute.  Generally, New Jersey courts will enforce choice-of-law provisions in contracts provided that the public policies of New Jersey are not offended and the contract bears some relation to the chosen jurisdiction. Pepe v. Rival Co., 85 F. Supp. 2d 349, 381-382 (D.N.J. 1999).  In the instant matter, the parties determined that Texas law would govern the 2003 Contract.  Moreover, the parties contend that the public policies of New Jersey are not offended by application of Texas law to this case.  The Court agrees.  Pursuant to the Erie doctrine, federal courts siting in

8

diversity will apply state substantive law and federal procedural law. Gasperini v. Center for Humanities Inc., 116 S.Ct. 2211, 2219 (1996). Thus, this Court will apply Texas substantive law and federal procedural law to the issues set forth in the instant dispute.

B. Count I

     Count I of Plaintiff's First Amended Complaint asserts a cause of action for Breach of the 2003 Contract for the period between July 1, 2003 and September 30, 2003. As noted above, on or about September 4, 2003, PMC Film and Shintech entered into an agreement (the "2003 Contract") for the period beginning July 1, 2003 through December 31, 2005. The price of PVC as set forth in the 2003 Contract is described as CDI minus 16.75 cents. However, the the 2003 Contract was not finalized until September 2003. Accordingly, Plaintiff contends that Defendant wrongfully invoiced at the rate set forth in the 2002 Contract, or CDI minus 11 cents, for the months of July, August and September 2003 and that it is therefore entitled to recover the difference between the price paid under the 2002 Contract and the price set forth in the 2003 Contract[3]. In total, Plaintiff contends that it has overpaid Shintech a total amount of $299,451.18 for PVC resin purchased for the period July 1, 2003 through September 30, 2003.

     Defendant, on the other hand, argues that it properly adjusted the price of PVC for the period between July 1, 2003 and September 30, 2003. Specifically, Defendant contends that because the 2003 Contract was not finalized until September 2003, neither party knew what the

---

[3] Specifically, Plaintiff alleges that it is entitled to a reimbursement of 5.75 cents per pound for all pounds purchased in July and August 2003. However, Plaintiff admits that it received a 1.25 cent per pound credit for all pounds purchased in September 2003, and thus, it is only owed a 4.5 cent per pound credit for pounds of PVC purchased during that month.

final 2003 Contract price would be during July, August and September. Thus, Defendant had to estimate the price and make adjustments for sales in those months. Indeed, Defendant argues that it adjusted the amount invoiced through the issuance of a 4.5 cent TVA reduction for July, August and September, a 2 cent reduction for July and August and a 1.25 cent credit for September 2003. In other words, Defendant contends that the parties made adjustments to the estimated invoice price through TVAs and other credits in order to retroactively reach the 2003 Contract of CDI minus 16.75 cents for the months of July, August and September 2003.

  To begin, as noted above, on or about September 4, 2003, PMC Film and Shintech entered into the 2003 Contract for the period beginning July 1, 2003 through December 31, 2005. The 2003 Contract plainly established the price of PVC as CDI minus 16.75 cents. Indeed, neither party disputes that the contract price beginning in July 2003 was CDI minus 16.75 cents. The only dispute in the instant matter is whether, as Defendant suggests, the parties retroactively reached this price during July, August and September through the issuance of TVAs and other credits, or, if, as Plaintiff suggests, the TVAs and other credits were provided in addition to the contracted-for price. Based on the evidence presented, the Court cannot determine whether the TVAs and other credits were given in addition to the 2003 Contract price or whether they were issued as a way to retroactively reach the 2003 Contract Price. Specifically, the Court notes that for the months of July and August 2003, the CDI index price was 50.25 cents, thus, according to the terms of the 2003 Contract Plaintiff should have paid 33.50 cents per pound for those months. See DiMuro Cert., Ex. 10 at App. 650. In September 2003, the CDI index price was 52.25 cents, thus Plaintiff should have paid 35.50 cents per pound during that month. DiMuro Cert., Ex. 10 at App. 650. However, during the months of July, August and September 2003,

10

Shintech did not invoice PMC Film at that rate[4]. See DiMuro Cert, Ex. 8 at App. 68-165. Instead, each invoice from July 1, 2003 through September 30, 2003 states the price as 41.25 cents[5], a price that is significantly higher than the contracted for price of CDI minus 16.75 cents, plus a TVA adjustment of 4.5 cents. Because the 2003 Contract is silent about TVAs and other credits, and because it is unclear from the evidence presented whether these TVAs were issued as a way to estimate the 2003 Contract price or if they were issued in addition to the not-yet finalized 2003 Contract price, I find that there is a significant issue of fact regarding Count I of Plaintiff's Complaint. For these reasons, this Court will deny both Plaintiff's and Defendant's Motions for Summary Judgment on Count I.

C. Count II

Count II of Plaintiff's First Amended Complaint asserts a cause of action for Breach of the 2003 Contract for the period between January 1, 2004 and August 31, 2005. The sole issue in Count II is an interpretation of the contract language contained in paragraph 4 which provides:

> The price for hopper truck shipments will be equal to CDI minus US $.1675 (16.75 cents) per pound for the month....If such publication

---

[4] Indeed, the Court notes that because the 2003 Contract had not been finalized at that time, Shintech could not have invoiced PMC Film at the 2003 Contract Price for July, August and September 2003.

[5] As noted above, the CDI price in July and August was 50.25 cents. Thus, under the 2002 Contract, PMC would have been invoiced at a rate of 39.25 cents (50.25 minus 11) for each day. However, each invoice in July and August establishes the price as 41.25 cents per pound. Although the parties do not explain where the additional two cent discount emanates from, in an attempt to interpret the attached invoices, the Court discovered that as part of an end of the month billing adjustment, the Defendant would provide an additional two cents per pound discount yielding a price of 39.25 or CDI minus 11 cents. See, e.g., DiMuro Cert., Ex. 8 at App. 99 & 127.

11

> ceases, or if Chemical Data Inc., makes adjustments to its published contract price for reasons not specific to changes in the market price of PVC resin for the month, or otherwise alters its methodology in any material manner, the parties will negotiate an appropriate adjustment to the pricing mechanism or a suitable replacement pricing mechanism, which, in either case, is consistent with CDI as of the date hereof. Without limiting the foregoing, the non-market change of $.08 (8 cents) per pound adjustment to CDI in Janaury 2004 due to a change in methodology by Chemical Data Inc. as announced in June 2003, will not affect the Price..."

Di Muro Cert., Ex. 6 at App. 34.  Specifically, Plaintiff argues that when Shintech charged PMC Film a price of CDI minus 8.75 cents beginning in January 2004, instead of the contracted-for price of CDI minus 16.75 cents per pound, Shintech overcharged by eight cents per pound in breach of the 2003 Contract.  Defendant, on the other hand, argues that the 2003 Contract unambiguously expressed the parties' intent that the non-market adjustment would not affect the "Price" received by Shintech.  In other words, the sole issue in dispute is whether the price that was to be paid by PMC Film was CDI minus 16.75 cents or CDI minus 8.75 cents.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.2003); Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983). To achieve this objective, a court must examine and consider the entire writing in an attempt to harmonize and give effect to all provisions of the contract so that none are rendered meaningless. Webster, 128 S.W.3d at 229; Coker, 650 S.W.2d 393. No single provision will be given controlling effect; instead, all provisions must be considered with reference to the whole instrument. Webster, 128 S.W.3d at 229; Coker, 650 S.W.2d at 393.  Moreover, contract terms are to be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a

technical or different sense.  Heritage Res., Inc. v. Nations Bank, 939 S.W.2d 118, 121 (Tex.1996)

      Initially, a court must determine whether it is possible to enforce a contract as written, without resort to parol evidence.  Webster, 128 S.W.3d at 229. Deciding whether a contract is ambiguous is a question of law.  Id. (citing Coker, 650 S.W.2d at 394).  A contract is unambiguous if it can be given a definite or certain legal meaning. DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex.1999).  If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. Webster, 128 S.W.3d at 229.  However, an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. Forbau, 876 S.W.2d at 134.  A court need not embrace strained rules of construction to avoid an ambiguity at all costs. Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex.1996).  Instead, courts must construe a contract from a utilitarian perspective, keeping in mind the particular business activity sought to be served.  Id.

      Moreover, a court may not consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract in order to create an ambiguity. Sears, Roebuck & Co. v. Commercial Union Ins. Corp., 982 S.W.2d 151, 154 (Tex.App.-Houston [1st Dist.] 1998, no pet.). A court may only consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous. See Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 283 (Tex.1996). An "ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." National Union Fire Ins. Co. of

13

Pittsburgh v. CBI Industries, 907 S.W.2d 517, 521 (Tex. 1995).  Thus, if a court accepts that a contract is unambiguous, the court cannot thereafter admit extrinsic evidence to determine the contract's meaning and the court must determine the intent of the parties as expressed within the four corners of the written document.  See CBI Industries, 907 S.W.2d at 520.

Importantly, in the instant dispute, neither Plaintiff nor Defendant suggests that the 2003 Contract is ambiguous.  Indeed, neither Plaintiff nor Defendant contests the definition of any of the terms or provisions contained within the agreement.  Moreover, both parties suggest that the intent of the parties can be gleaned from the four corners of the contract.  See Shintech Summary Judgment Brief ("SJ Brief") at 12-13; PMC Opp. Brief at 23; PMC Sur-Reply at 2-3.  The Court agrees and finds that Section 4 of the 2003 Contract is amenable to a definite and certain legal meaning, and is, therefore, not ambiguous.  Thus, I will not consider any extrinsic evidence in determining the intent of the parties with regard to Section 4.  Instead, the Court will rely on the express language of the contract in order to determine the parties' intent.

As noted above, the first sentence of Section 4 of the 2003 Contract establishes: "The price for hopper truck shipments will be equal to CDI minus US $.1675 (16.75 cents) per pound for the month."  Di Muro Cert., Ex. 6 at App. 34.  Accordingly, Plaintiff argues that the express language of the Contract unambiguously established the cost of PVC as CDI minus 16.75 cents.  In support of this interpretation, Plaintiff points to the sixth and final sentence of Section 4 which provides that "[w]ithout limiting the foregoing, the non-market change of $.08 (8 cents) per pound adjustment to CDI in Janaury 2004 due to a change in methodology by Chemical Data Inc. as announced in June 2003, will not affect the Price." Di Muro Cert., Ex. 6 at App. 34 (emphasis added).  Thus, Plaintiff argues that the sixth and final sentence demonstrates that the eight cent

14

non-market change was not to have any affect on the price of PVC (CDI minus 16.75 cents) as established in the first sentence. In other words, Plaintiff contends that the clear language in the Section 4 establishes the cost of PVC resin as CDI minus 16.75 cents regardless of what was to happen in January 2004. For these reasons, Plaintiff argues that Shintech breached the 2003 Contract by charging PMC Film at a rate of CDI minus 8.75 cents per pound beginning in January 2004. The Court does not agree.

To properly construe the parties' intent as expressed in a written instrument, a court must examine the entire writing and give effect to all contract provisions. Webster, 128 S.W.3d at 229; Coker, 650 S.W.2d at 393. Thus, the first sentence, "[t]he price...will be equal to CDI minus US $.1675" cannot be read in isolation. Indeed, to properly glean the intent of Section 4, this Court must construe this provision in the context of the other sentences. Specifically, the Court must consider the following sentences, "[i]f...Chemical Data Inc., makes adjustments to its published contract price for reasons not specific to changes in the market price of PVC resin for the month. . . the parties will negotiate an appropriate adjustment to the pricing mechanism or a suitable replacement pricing mechanism. Without limiting the foregoing, the non-market change of $.08 (8 cents) per pound adjustment to CDI in January 2004 due to a change in methodology by Chemical Data Inc...will not affect the price." Di Muro Cert., Ex. 6 at App.34.

Initially, the Court will look at the first and fifth sentences of Section Four. Indeed, the Court understands these provisions to indicate that if a non-market change to CDI occurred, the parties would negotiate a replacement pricing mechanism that would have a neutral affect on the price of PVC. In other words, following a change to CDI, the contract required the parties to negotiate to keep the price of PVC -- as paid by PMC Film and received by Shintech -- the same

15

as the contracted for price of PVC. For example, if the price of PVC was 42 cents before a CDI change, the parties were contractually obligated to negotiate a new pricing mechanism that would establish a price of 42 cents after the CDI change.

 However, the Court must also consider the affect of the sixth sentence on the above scheme. As above, for all unanticipated non-market changes to CDI, the parties were required to negotiate a new pricing scheme to keep the price of PVC constant. However, the sixth sentence anticipates a January 2004 non-market change to CDI and indicates that it will "not affect the Price." In construing this sentence in light of the remaining provisions in Section Four, the Court finds that this sixth sentence can only be understood to carve out an exception for the January 2004 non-market change. In other words, the Court understands the fifth sentence as setting forth a practice pursuant to which the parties would negotiate replacement pricing mechanisms for any changes to CDI; however, reading the fifth sentence in light of the sixth sentence manifests the parties' intent to carve out an exception for the January 2004 change. Indeed, the Court finds that these provisions, taken together, created a substitute for the contractually required negotiations for CDI changes for the adjustment that was to occur in January 2004. Thus, the Court finds that Section Four expresses the parties' intent that despite the anticipated January 2004 change to CDI, the price of PVC as paid for by PMC Film and received by Shintech would remain the same.

 Moreover, the Court notes that if Section Four were subject to Plaintiff's interpretation, i.e. that the price of PVC was CDI minus 16.75 irrespective of the anticipated non-market change, the Fifth and Sixth sentences of Section Four would be rendered meaningless. See Webster, 128 S.W.3d at 229 ( holding that a court must examine a Contract in an attempt to

16

harmonize all the provisions to ensure that none are rendered meaningless). In addition, the Court notes that following the 2004 adjustment to CDI, Shintech began charging PMC Film at the new lower rate and PMC Film paid at this rate for at least eight months before expressing its disagreement.

For all these reasons, the Court finds that the only reasonable interpretation of Section Four of the 2003 Contract is that the parties intended the eight cent non-market adjustment to have a neutral affect on the price. Thus, I hold the price charged by Defendants from January 1, 2004 through August 30, 2004, was contractually proper and I will grant Shintech's Motion for Summary Judgment on Count II of Plaintiff's Complaint.

**IV. Conclusion**

For the reasons discussed herein, the Court will deny PMC Film's Motion for Summary Judgment on Count I and Count II of its Complaint. In addition, the Court will deny Shintech's Motions for Summary Judgment on Count I of the Complaint, but the Court will grant Defendant's Motion on Count II. An appropriate order will follow.

Dated: September 20, 2006    /s/ Freda L. Wolfson
                              Honorable Freda L. Wolfson
                              United States District Judge